20


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION




THERESA A. NIEKAMP,

Plaintiff,

Civil Action No. 04-72332

v.

HON. JOHN CORBETT O'MEARA
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Theresa A. Niekamp brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act. Plaintiff filed a motion for a sentence four remand and Defendant filed a motion for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for a Sentence Four Remand be DENIED.

**PROCEDURAL HISTORY**

On December 19, 2001, Plaintiff filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), alleging an onset of disability date of June 15, 1996 (Tr. 49-51).[1] After the initial denial of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on November 20, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) Regina Sobrino. Plaintiff, represented by attorney John P. Miller, testified. (Tr. 373-397). Mary Williams, acting as Vocational Expert (VE) also testified (Tr. 397-402). ALJ Sobrino found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform a significant number of jobs in the national economy (Tr. 20). On April 28, 2004, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on July 9, 2004.

**BACKGROUND FACTS**

Plaintiff, born November 7, 1962, was age forty when the ALJ issued her decision (Tr. 15). She received a Bachelor of Arts degree (Tr. 15). Plaintiff's previous work includes jobs as a marketing administrator and waitress (Tr. 122). Plaintiff alleges that the ability to stand, walk, or lift for long periods of time, as well as balance problems and back and knee pain prevents her from working (Tr. 63).

---

[1]Plaintiff filed an application for Supplemental Security Income on January 14, 2002 (Tr. 361).

### A. Plaintiff's Testimony

On November 20, 2003 Plaintiff testified before ALJ Sobrino that she lived alone in an apartment in Houghton Lake, Michigan (Tr.373). Plaintiff reported that she graduated from college with a Bachelor of Arts Degree (Tr. 274). She indicated that she discontinued work on June 15, 1996 due to back pain (Tr. 274). She testified that subsequent to the onset of disability, she worked part-time for a chiropractor and also worked part-time as a babysitter (Tr. 275). She indicated that although she stopped working full-time in 1996 because of back pain, she suffered from stomach aches and weakness (Tr. 375).

Plaintiff reported that her poor sense of balance obliged her to use a cane (Tr. 375). She estimated that even with the aid of a cane, she could not stand or walk for more than thirty minutes (Tr. 376). She testified that since she ceased full-time employment, her back pain had worsened (Tr. 377). She estimated that pain and weakness in her back and shoulders prevented her from lifting more than two pounds (Tr. 378). She reported minor difficulties holding a pen or pencil because of arthritis and stated that she also experienced trouble reaching overhead, due to shoulder pain (Tr. 379). She also reported trouble bending at the waist and that bending her knees caused pain (Tr. 380). She reported that she experienced difficulty going down stairs, indicating that would not attempt to descend stairs without a railing to grasp (Tr. 380).

Plaintiff testified that she prepared her own meals and performed housekeeping chores, and did laundry at her parents' house, where she received help carrying clothes, but reported that she did not perform yard work (Tr. 381-382). She reported that she could grocery shop fairly easily because she used the cart as a walker (Tr. 381). She indicated that she experienced no significant trouble bathing or showering, but getting in and out of the bathtub took extra time (382). She indicated that she did not belong to any social organizations, but visited with neighbors and relatives (Tr. 381). She stated that numbness in her feet prevented had prevented her from driving for the two years prior to the hearing (Tr. 283). She reported painting ceramic crafts as a hobby (Tr. 382).

Plaintiff testified that she sought emergency room treatment in April, 2000 for pancreatitis and alcohol abuse (Tr. 385). She acknowledged that she had been treated again in July, 2001 for alcoholic hepatitis and severe malnutrition and in September, 2001 for alcoholic hepatitis, malnutrition, and peripheral neuropathy (Tr. 385). She reported that she subsequently attended Alcoholics Anonymous meetings and stated that she had not ingested alcohol since September, 2001 when she was told by her health care providers that she would die if she continued to drink (Tr. 385).

Plaintiff reported that she took Ultram for pain, Zyrtec for allergies, and Fosamax once a week for osteoporosis (Tr. 386, 391). She testified that she received mental health therapy on three occasions following her September, 2001

hospitalization (Tr. 386). She stated that she had been enrolled in a physical therapy program, but could not afford to continue, indicating that she continued to attempt to exercise on her own (Tr. 388).

**B. Medical Evidence**

In May through July, 1996 Plaintiff sought chiropractic treatment for back pain on over twenty occasions (Tr. 124-165). Plaintiff's initial examination revealed restricted movement in the cervical area including the right lateral flexion, left lateral flexion, right rotation, left rotation, and flexion extension and thoracic spine restrictions with right and left lateral flexion extension and with rotation (Tr. 164).

In April, 2000, Plaintiff sought emergency room treatment (Tr.166). Plaintiff's admitting diagnoses included abdominal pain secondary to pancreatitis, alcohol abuse, history of bulimia and weight loss, amenorrhea, GERD, and an electrolyte imbalance (Tr. 166). Care givers deemed Plaintiff's condition on discharge several days later as fair, prescribing a low-fat diet, rest, and exercise (Tr. 168). Plaintiff again sought emergency treatment in July, 2001, complaining of unrelenting nausea and vomiting for seven days (Tr. 180). Plaintiff, diagnosed with alcoholic hepatitis, acknowledged to hospital staff that she had ingested alcohol three days earlier (Tr. 182). She presented as alert and oriented but somewhat manic (Tr. 180). In September, 2001, Plaintiff sought emergency treatment, complaining of constant diarrhea (Tr. 200). She admitted that she drank one pint or more of alcohol per day (Tr. 200). Gregory

L. Cammell, M.D., diagnosed Plaintiff's condition as a flare of alcoholic hepatitis (Tr. 203).

In November, 2001 an examination of Plaintiff at MidMichigan Medical Center in Clare, Michigan revealed that Plaintiff was gaining weight and was able to perform activities of daily living, although she also reported experiencing frustration and depression (Tr. 243-244). Further exam notes indicate that Plaintiff experienced improved health as she participated in physical and occupational therapy (Tr. 242).

In February, 2002, George Ronan, PH.D., performed a psychiatric/psychological exam of Plaintiff on behalf of Disability Determination Service (DDS) (Tr. 246). Plaintiff reported that she enjoyed good relations with her family and had developed friendships with other AA members (Tr. 247). She reported that she had just moved into her own home, acknowledging that her parents supported her financially (Tr. 247). She expressed frustration at her inability to continue her previous activities (Tr. 247). Dr. Ronan characterized her mental activity as "spontaneous" with well organized speech (Tr. 248). She confessed that she suffered from anxiety attacks (Tr. 248). Dr. Ronan diagnosed her with a generalized anxiety disorder, along with hepatitis, cirrhosis, and pancreatitis, assessing her GAF at 65 (Tr. 249). He opined that Plaintiff could manage her own benefit funds (Tr. 249).

In March, 2002 Ronald C. Marshall, Ph.D., completed a Psychiatric Review Technique Form indicating that Plaintiff experienced anxiety-related disorders and substance addiction disorders (Tr. 293). He found that Plaintiff had mild restriction of activities of daily living and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 303). He concluded that Plaintiff possessed marginal difficulties with complex tasks but retained the ability to perform unskilled work on a limited basis (Tr. 305).

Dr. Marshall also prepared a Mental Residual Functional Capacity Assessment, finding that Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods was moderately limited (Tr. 307). He noted that Plaintiff's alcoholism was in remission and she performed meal preparation and household chores as well as socializing on a regular basis (Tr. 309). Dr. Marshall found Plaintiff fully credible (Tr. 309).

Also in March, 2002, Michael J. Miller, M.D., found that Plaintiff met the criteria for osteoporosis (Tr. 311). He opined that Plaintiff's bone density loss, unusual for an individual of Plaintiff's relatively young age, was due to Plaintiff's past use of Prednisone (steroid) therapy (Tr. 311). He placed Plaintiff "at significant risk for a future fracture" (Tr. 311). In April, 2002 Harold Niekamp, M.D., appraising the result of Plaintiff's bone density tests and her observable difficulty in climbing

and descending stairs, opined that the osteoporosis limited her physical capabilities (Tr. 314).[2]

Also in April, 2002, Louise J. Wunsch, M.D., performed a Residual Functional Capacity Assessment of Plaintiff, listing her primary diagnosis as osteoporosis and made a secondary diagnosis of cirrhosis (Tr. 318). Dr. Wunsch found that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently (Tr. 319). She also found that Plaintiff retained an unlimited ability to push and pull, modified by her lifting and carrying limitation (Tr. 319).

**C. Vocational Expert Testimony**

VE Mary Williams, reported that she had prepared a vocational analysis based on Plaintiff's former work (Tr. 399 *referencing Tr. 122*). VE Williams' analysis classified Plaintiff's previous work as a waitress as unskilled at the light exertional level and work as an office clerk as semi-skilled at the sedentary exertional level (Tr. 122). ALJ Sobrino posed the following question to the VE:

Q. "I'd like you to assume a person who has [Plaintiff's] work background. Assume that the hypothetical individual is limited to lifting, carrying, pushing or pulling five pounds occasionally and 10 pounds rarely. Pushing – okay, that one is taken care of. Standing and walking would be limited to a maximum of two hours in an eight-hour workday, in increments of no more than 15 minutes. The individual can sit for eight of eight hours in an eight-hour workday. The individual can rarely climb stairs, and then needs to have railings to do so. Let me go back and modify the carrying, because the carrying is going to be somewhat different. Lift, push and pull five pounds

[2] Dr. Niekamp, a retired surgeon, is Plaintiff's father (Tr. 315).

> occasionally, 10 pounds rarely. I'll just say no carrying in the course of work. The individual cannot crouch, kneel, crawl, climb ladders, ropes or scaffolds or balance. The individual can rarely stoop. The individual should be able to use a cane to stand or to walk. The individual cannot operate foot or leg controls. The individual is limited to performing work that is simple and routine in nature. The individual should not be exposed to hazards. (Tr. 399-400).

Stating her testimony was consistent with the information provided in the Dictionary of Occupational Titles, the VE replied that given the above limitations, Plaintiff could not perform her past work, but could perform the work of a surveillance system monitor (1,500 jobs), referral and information clerk (1,700 jobs), and order clerk (5,560 jobs) (Tr. 400). The VE stated that the jobs cited represented regional incidence figures for the lower peninsula area Michigan (Tr. 400). In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff's health concerns prevented her from working one day a week, she would be unable to perform any of the above jobs (Tr. 401).

**D. The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff suffered from the severe impairments of alcoholic hepatitis, peripheral neuropathy, scoliosis, degenerative disc disease of the cervical spine, depression, alcoholism (in remission), an anxiety disorder and osteoporosis (Tr. 20). Nonetheless, she determined that although Plaintiff had a severe impairment or combination of impairments, none met or equaled any impairment listed in Appendix 1 of the Social Security Regulations

(Tr. 20 ).

She found that while Plaintiff was unable to perform any past relevant work, with the exception of a six month period in 2001, Plaintiff could perform a narrow range of sedentary work, retaining

> "the residual functional capacity to lift, carry, push and pull 5 pounds occasionally and 10 pounds rarely (with no carrying); stand/walk 2 hours per 8-hour workday. [Plaintiff] should have the opportunity to alternate position at will. [She] should avoid climbing ladders/ropes/scaffolds, balancing, kneeling, crouching or crawling. She can rarely climb stairs (with railings) and stoop. [She] should avoid hazards, overhead reaching, and forceful gripping, grasping, pinching, twisting or squeezing. She should be able to use a cane to stand or walk. [She] cannot operate foot or leg controls. She is limited to performing simple, routine work. "

(Tr. 18, 20).

ALJ Sobrino found that Plaintiff could still perform a significant number of jobs in the national economy (Tr. 20). The ALJ, taking into consideration Plaintiff's age, education, past relevant work experience and VE testimony, found that Plaintiff could perform the work of a referral and information clerk, order clerk, and surveillance system monitor (Tr. 20).

The ALJ found Plaintiff's "allegations of the intensity, persistence, and functionally limiting effects" of her physical limitations "not fully substantiated by objective medical or other evidence" (Tr. 20 ). In support of her credibility determination, the ALJ cited Plaintiff's activities of daily living, noting that Plaintiff grocery shopped, swam, and performed craft work (Tr. 18). The ALJ further noted

that Plaintiff maintained contacts with friends and family and had experienced no "extended episodes of decompensation" (Tr. 18).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Residual Functional Capacity

Plaintiff argues that the Residual Functional Capacity (RFC) assessment composed by the ALJ and used as the basis for the hypothetical question posed to the VE impermissibly omits consideration of Plaintiff's non-exertional impairments of

depression and anxiety disorder, which the ALJ found to be severe at Step two of her analysis. *Plaintiff's Motion for Remand, Brief* at 3. Citing *Howard v. Commissioner,* 276 F.3d 235, 241 (6th Cir. 2002), Plaintiff maintains that the RFC, which limits her to "simple, routine work" inadequately expresses her mental limitations, mandating a remand for further fact-finding. *Brief* at 4.

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

ALJ Sobrino's RFC, which limited Plaintiff to simple, routine work sufficiently acknowledges her Step two non-exertional limitations. While Plaintiff lays out a cogent case for remand, based on a stringent application of *Howard,* 276 F.3d at 241, in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), the Sixth Circuit recently rejected an interpretation of *Howard,* which required ALJs to list a claimant's non-exertional Step two impairments in the RFC or hypothetical questions. Thus, the ALJ is not required to list all of a claimant's maladies in the

hypothetical question. "We read *Howard* to hold *only* that a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be reversed. *Webb* 368 F.3d at 631 (6th 2004); *quoting Howard,* 276 F.3d at 239.(emphasis added).[3] Nonetheless, as discussed by Plaintiff, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Id.* at 632 (internal citations omitted), *quoting Varley v. Sec'y of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987).

*Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), also refutes the argument that the ALJ must adhere to talismatic use of the PRTF language in his hypothetical questions to avoid remand. The court found that a question was sufficient provided that it properly reflected plaintiff's relevant limitations: "The ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment."

The ALJ's RFC, which acknowledged that Plaintiff's mental impairments

---

[3]Plaintiff also cites *Walker v. Secretary of HHS,* 258 F. Supp 2d 693 (E.D. Mich. 2003) in support of the proposition that the ALJ must include a mental health impairment found to be severe at Step two in the hypothetical question. *Brief* at 5. As previously discussed by this Court, portions of *Walker* stay within the parameters of a reasonable interpretation of *Howard,* later set out in *Webb.* However, sections of *Walker* cited by Plaintiff, rely on an analysis of *Howard* that was later rejected by Webb. See *Walker,* 258 F. Supp 2d at 701.

limited her to "simple, routine work," adequately reflected her Step two findings and should not be disturbed by this Court. *See Lyons v. Commissioner of Social Security,* 351 F. Supp.2d 659, 663 (E.D. Mich.,2004) (the ALJ properly took into took into account Plaintiff's mental limitations by "limiting the possible jobs to *simple,* unskilled, and *routine* work")(emphasis added); *Webb,* 368 F.3d at 633.

**B. 20 CFR 404.1521(b)**

Plaintiff argues next that the ALJ erred by addressing Plaintiff's work skills rather than her mental abilities. *Plaintiff's Brief* at 6. Plaintiff claims that the ALJ's decision failed to consider whether Plaintiff could "perform the work-related mental activities required by competitive, remunerative work." *Id.* Plaintiff maintains that the ALJ was required to consider the following factors:

1. Understanding, carrying out and remembering simple instructions.
2. Use of judgment.
3. Responding appropriately to supervision, co-workers and unusual work settings.
4. Dealing with changes in a routine work setting.

20 CFR 404.1521(b).[4]

---

[4] In its entirety, § 404.1521(b) reads as follows:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

The court in *Eiseler v. Barnhart,* 344 F.Supp.2d 1019, 1029 (E.D.Mich. 2004) recently stressed the difference between work skills and mental abilities:

> "[A] skill is different not only from an innate aptitude, but also different from various innate psychological limitations. Courts have found that hypotheticals limiting a worker to 'unskilled work' have not been sufficient to accommodate certain psychological limitations. *Newton v. Chater,* 92 F.3d 688 (8th Cir.1996), held that a reference merely to 'unskilled sedentary work' in a hypothetical question is insufficient to describe and accommodate concentration deficiencies[.]"

Contrary to Plaintiff's argument, I find that the ALJ properly considered all the factors list in 20 CFR 404.1521(b) in her decision and further, considered Plaintiff's aptitudes, given her mental health limitations, and as well as her work skills. Although the ALJ adopted Dr. Marshall's PTRF assessment which found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, she explained in detail why Plaintiff could nonetheless perform a narrow range of sedentary work (Tr. 18). The ALJ cited Plaintiff's daily activities to support her finding of non-disability, concurring with Dr. Marshall's ultimate conclusion that Plaintiff could perform sedentary, unskilled work (Tr. 18 *referencing* Tr. 303).

ALJ Sobrino noted that Plaintiff had not experienced extended episodes of decompensation and was not afflicted with a "disease process that results in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause decompensation" (Tr. 18). She observed that Plaintiff lived alone and exhibited independence in her activities of daily living,

participating in crafts projects, attending AA meetings, grocery shopping, and cooking for herself (Tr. 18). Similarly, the ALJ properly considered the factors listed in § 404.1521(b), pointing out that Plaintiff, a college graduate, performed crossword puzzles, read books, and performed rug-hooking, all of which suggested more than a rudimentary ability to perform gainful employment and ability to carry out simple instructions, in spite of the impairment of depression (Tr. 15, 18). Moreover, Plaintiff's demonstrated ability to care for her own needs, shop, and maintain meaningful social contacts supports the ALJ's conclusion that Plaintiff exhibited a use of judgment sufficient to perform a limited range of work (Tr. 18). The ALJ explicitly discussed Plaintiff's admission that she had enjoyed good relationships with her co-workers before the onset of disability (Tr. 18). Although the ALJ found, with record support, that minimal changes at work would not be expected to cause decompensation, apparently out of an abundance of caution, she limited Plaintiff to simple, routine work in recognition of her Step two impairments of depression and an anxiety disorder (Tr. 18). In addition to adhering to the overarching requirement that substantial evidence supports her decision, the ALJ's thorough analysis reflects adherence to the Social Security Administration's procedural requirements and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for a Sentence Four Remand be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the

court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. STEVEN WHALEN
U.S. Magistrate Judge

Dated: April 1, 2005

**CERTIFICATION OF SERVICE**

I, the undersigned, hereby certify that I have on the 1st day of April, 2005, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:

LEWIS SEWARD, ESQ.
1009 WASHINGTON AVENUE
BAY CITY, MI 48708

DERRI T. THOMAS
ASSISTANT U.S. ATTORNEY
211 WEST FORT STREET
SUITE 2001
DETROIT, MI 48226

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE REGIONAL COUNSEL
200 WEST ADAMS
30TH FLOOR
CHICAGO, IL 60606

G. K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen